CAROLINA PLACE JOINT VENTURE, Plaintiff v. FLAMERS CHARBURGERS, INC. d/b/a FLAMERS CHARBROILED HAMBURGERS, and F.A. INTERNATIONAL, INC., Defendants v. F.A. INTERNATIONAL, INC. and SHAFIQUE ALRUMAIH, Third-Party Defendants

No. COA00-745 and COA00-1231

(Filed 21 August 2001)

### Guaranty— personal guaranty—franchise agreement

The trial court did not err by granting summary judgment in favor of a franchisor on the issue of indemnity under a personal guaranty by the franchisee's president for unpaid rent under the lease and sublease and for reasonable attorney fees, because: (1) the personal guaranty was merged into the franchise agreement for "all of the obligations and liabilities" of the franchisee to franchisor; (2) the obligation to pay rent was specifically included in the franchise agreement; and (3) the franchisor paid the lessor an amount on a judgment against the franchisor and the franchisee for rent owed.

Appeal by third-party defendant Alrumaih from two separate orders entered 15 March 2000 by Judge Jesse B. Caldwell and 27 July 2000 by Judge Richard D. Boner in Mecklenburg County Superior Court. By order entered 19 January 2001 this Court allowed cases COA00-506, COA00-745, and COA00-1231 to be consolidated for purposes of hearing only. This Court now orders that COA00-745 and COA00-1231 be consolidated for decision in this opinion and that COA00-506 be decided in a separate opinion. Heard in the Court of Appeals on 5 June 2001.

*Parker Poe Adams & Bernstein, L.L.P. by John W. Francisco for third-party defendant-appellant Shafique Alrumaih.*

*John T. Daniel for defendant-appellee Flamers Charburgers, Inc.*

*No brief filed for plaintiff-appellee Carolina Place Joint Venture.*

CAROLINA PLACE JOINT VENTURE v. FLAMERS CHARBURGERS, INC.

[145 N.C. App. 696 (2001)]

BRYANT, Judge.

The pertinent factual and procedural background is as follows: On 7 March 1991, Carolina Place Joint Venture (Carolina Place) entered into a ten-year lease agreement with Flamers Charburgers, Inc. (Flamers) for retail space in the food court of the Carolina Place Mall. On 1 August 1991 the lease commenced. On 16 September 1994, Shafique Alrumaih (Alrumaih), president and CEO of F.A. International (FAI), executed a personal guarantee of all obligations of FAI under the Franchise Agreement. As an inducement for Flamers to enter into the Franchise Agreement with FAI, Alrumaih agreed to guarantee all the obligations and liabilities which FAI owed to Flamers under the agreement. On 20 September 1994, Flamers entered into a Franchise Agreement with FAI which included the 16 September 2000 personal guarantee by Alrumaih and the sublease.

On 12 December 1997, Carolina Place terminated Flamers' and FAI's right of possession and two months later filed an action in summary ejectment. On 10 June 1998, Carolina Place's motion for summary ejectment was granted and possession was awarded. However, defendants Flamers and FAI did not vacate the premises until 30 June 1998.

Carolina Place filed a complaint in January 1999 seeking to recover from defendants FAI and Flamers previous rent owed and rent for the remainder of the lease term. Four months later, Flamers answered by filing a cross-claim against FAI and a third-party complaint against Alrumaih. Alrumaih answered the third party complaint and denied his obligation to personally guarantee FAI's rental obligation to Carolina Place.

On 30 December 1999, Carolina Place filed a motion for summary judgment against Flamers and FAI for the unpaid rent under the lease and sublease. On 20 January 2000, the trial court granted summary judgment and issued an order against Flamers and FAI, jointly and severally, in the principal amount of $214,512.45.

On 16 February 2000, both Flamers and FAI filed a notice of appeal (COA 00-506) from the order granting summary judgment in favor of Carolina Place for rent and related charges. Flamers has abandoned its appeal and only FAI continues its appeal against Carolina Place. Flamers then filed a motion for summary judgment against Alrumaih based on his personal guarantee of FAI's obligation to indemnify Flamers. The trial court granted Flamers' motion for

summary judgment against Alrumaih and ordered that Alrumaih was liable for any amounts Flamers paid to Carolina Place to satisfy the 20 January 2000 judgment. On 13 April 2000, Alrumaih filed a notice of appeal (COA 00-745) of the 15 March 2000 court order.

On 12 June 2000, Flamers filed a motion for summary judgment against Alrumaih for $50,000, the amount Flamers had paid to the plaintiff and $7,500 for attorney fees. On 27 July 2000, the trial court granted Flamers' motion for summary judgment against Alrumaih pursuant to the personal guarantee and awarded Flamers a $50,000 judgment plus reasonable attorney's fees in the amount of $7,500. On 17 August 2000, Alrumaih filed notice of appeal (COA 00-1231) of that judgment.

---

The sole issue on appeal in both cases is whether the trial court erred in granting summary judgment in favor of Flamers on the issue of indemnity under the personal guarantee. Because Alrumaih personally guaranteed the franchise agreement and because the obligation to pay rent was included in the franchise agreement, we uphold the trial courts' rulings on summary judgment.

Alrumaih contends that the personal guarantee was ambiguous and thus the issue was not appropriate for summary judgment. He also contends that the franchise agreement, by its terms, does not incorporate the terms of the sublease agreement entered into between Flamers and FAI and thus the personal guarantee does not apply to the sublease. We are not persuaded by Alrumaih's arguments.

Summary judgment is proper under G.S. 1A-1, Rule 56(c) only when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law." An issue is material if "the facts alleged would constitute a legal defense, or would affect the result of the action, or if its resolution would prevent the party against whom it is resolved from prevailing in the action." *Koontz v. City of Winston-Salem,* 280 N.C. 513, 518, 186 S.E.2d 897, 901 (1972); *see Northwestern Bank v. Gladwell,* 72 N.C. App. 489, 493, 325 S.E.2d 37, 39 (1985).

A guarantor's liability depends on the terms of the contract as construed by the general rules of contract construction. *Jennings Communications Corp. v. PCG of the Golden Strand, Inc.,* 126 N.C.

App. 637, 641, 486 S.E.2d 229, 232 (1997). Under the general rules of contract construction, where an agreement is clear and unambiguous, no genuine issue of material fact exists and summary judgment is appropriate. *Corbin v. Langdon*, 23 N.C. App. 21, 27, 208 S.E.2d 251, 255 (1974). In contrast, an ambiguity exists in a contract if the "language of the [contract] is fairly and reasonably susceptible to either of the constructions asserted by the parties." *Taha v. Thompson*, 120 N.C. App. 697, 701, 463 S.E.2d 553, 556 (1995) (citations omitted). Moreover, all contemporaneously executed written instruments between the parties, relating to the subject matter of the contract, are to be construed together in determining what was undertaken. *Yates v. Brown*, 275 N.C. 634, 640, 170 S.E.2d 477, 482 (1969); *see generally Perry v. Southern Sur. Co.*, 190 N.C. 284, 129 S.E. 721 (1925); *Matter of Sutton Investments, Inc.*, 46 N.C. App. 654, 266 S.E.2d 686 (1980).

In the present case, the guarantee which was signed as an inducement to get Flamers to enter into the Franchise Agreement with FAI, specifically provides that Alrumaih will personally guarantee "unconditionally to Franchisor (Flamers) the full, faithful and punctual performance, fulfillment and observance of *all of the obligations and liabilities of the Franchisee (FAI) to Franchisor.*" (Emphasis added). In addition, we are convinced that at the time the documents were executed, the parties intended that they be construed together. All of the documents were merged into one document, the Franchise Agreement, as indicated by the consecutive page numbers in the Franchise Agreement and the Table of Contents. (The personal guarantee is on page 37 of the Franchise Agreement and the sublease is on pages 43-45.) Considering the foregoing facts, we find that the Franchise Agreement containing the personal guarantee and the sublease should "be construed together in determining what was undertaken," thus resolving any ambiguity that might arise if these documents were read alone. *Yates*, at 640-41, 170 S.E.2d at 482.

Moreover, we find that the franchise agreement *does* set forth FAI's obligation to pay rent on page 13, paragraph 8.2(b) of the franchise agreement:

(b) Franchisor (Flamers) shall sublet the location to Franchisee (FAI) *pursuant to the form of sublease* set forth in Exhibit "C" hereto. The *basic terms of the lease on which Franchisor is obligated shall be those terms and conditions upon which Franchisee shall be obligated,* although Franchisor reserves the

VINCENT v. CSX TRANSP., INC.

[145 N.C. App. 700 (2001)]

right to charge Franchisee an administrative fee for Franchisor's services in connection with the sublease. (Emphases added.)

Finally, we find that the language "all of the obligations and liabilities" in Alrumaih's personal guarantee creates an obligation similar to the obligation in *Devereux Properties, Inc. v. BBM & W, Inc.*, 114 N.C. App. 621, 442 S.E.2d 555, *rev. denied*, 337 N.C. 690, 448 S.E.2d 519 (1994). In *Devereux*, the guarantee agreement covered "each and every obligation of Tenant under this Lease Contract." *Id.* at 625, 442 S.E.2d at 557. The court held the guarantors of the commercial lease liable for rent payments and attorneys' fees. *Id.* at 622, 442 S.E.2d at 555. The court reasoned that defendants were responsible for attorneys' fees because the lease required them to pay in the event of a default. *Id.* at 625, 442 S.E.2d at 557. Similarly, in the case at hand, Alrumaih guaranteed *all* of FAI's obligations to Flamers, which included the duty to pay rent.

Because the obligation to pay rent was specifically included in the franchise agreement, Alrumaih must indemnify Flamers' obligations under the lease. Accordingly, we conclude that the trial court's orders granting summary judgment in favor of Flamers are affirmed.

AFFIRMED.

Judges GREENE and TIMMONS-GOODSON concur.